Charles Leon KIRK, Appellant,

v.

The STATE of Texas, State.

No. 2–82–119–CR.

Court of Appeals of Texas, Fort Worth.

June 15, 1983.

Paul Sorenson, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and James J. Heinemann Asst. Dist. Atty., Fort Worth, for the State.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

## OPINION

ASHWORTH, Justice.

Appellant, Charles Leon Kirk, appeals from a conviction of sexual abuse of a child and confinement for a period of eight years in the Texas Department of Corrections.

Judgment affirmed.

Kirk's first ground of error alleges the evidence is insufficient to support a conviction. We are required to review the evidence admitted in order to rule on such ground.

 The prosecutrix, a girl who was seven years old at the time of the offense, and eight years old at the time of trial, testified she went to the apartment occupied by Kirk's family to play with Kirk's younger brother, who was about ten years of age. She was admitted into the apartment by Kirk, who was then eighteen years of age. She and the younger brother watched television briefly with Kirk and then went into a bedroom to play. Kirk came into the bedroom, ordered the younger brother out, placed the prosecutrix on a bed, and pulled down her pants and panties. In view of the error alleged, it is necessary to restate some of the testimony of the prosecutrix:

Question: Put your hands down in you lap, okay? Tell me what he did at that point.

Answer: Umm—he put his head between my legs.

Question: Okay. He put his head between your legs?

Answer: Yes.

BY MR. CONNER:

Q. Courtney, I know you would rather talk about something else, but I want you to speak up and be loud when you say this, okay?

A. Okay.

Q. All right. Okay, Courtney, I want you to step up her for a second. Will you do that form (sic) me?

A. [Witness complies.]

Q. I want you to look at this picture. Do you know what it's a picture of?

A. Yes, a little girl—front and back of a little girl.

Q. Have I showed you this picture before?

A. Yes.

Q. Okay. All right. Now, Courtney, I want you to take this red pen and I want

you to mark where it is that he put his head between your legs.

A. Can I sit down after I do this?

Q. Yes.

A. Okay.

Q. Courtney, I'm going to also to show you this doll. Have you seen this doll before?

A. Yes, sir.

Q. I've shown you this doll before, haven't I?

A. Yes, sir.

Q. I want you to look at the doll. Can you turn your chair around just a little bit, like that?

A. Yes.

Q. Okay. Can you stand up right there where you are? You don't have to move away from that; just do it for me one more time. Okay?

All right. I want you to—when you pull this doll's dress up, I want you to point and show the jury where it is that he put his head.

A. [Witness complies.]

MR. CONNER: Let the record reflect that this is a doll with—an anatomically correct doll with a vagina sewn into it. Let the record reflect that the witness pointed her finger to where the vagina is on the doll.

BY MR. CONNER:

Q. Courtney, you can also see there is a hole on the bottom—on the doll's bottom, is that right?

A. Yes, sir.

Q. Did he put it on the front or did he put his head on the back?

A. Front.

Q. Front? Okay, you'll have to speak up loudly, okay? And is that where he put his head?

A. Yes.

Q. Is that where you go to the bathroom?

A. Yes, sir.

Q. Okay. Courtney, I'm going to show you a little boy doll. Do you see his face?

A. Yes.

Q. Now, when you say that John-John's brother put his head between your legs, what part of his head did he put—well, you said he put it between your legs where you marked the "X" and whereyou (sic) have shown the Jury on the doll.

What part of his head did he put between your legs? And where are you pointing to?

A. Mouth.

Q. Speak up louder. Can you say that again?

A. Mouth.

Q. Don't hold your hands in front of your mouth. Courtney, did you want him to put his mouth between your legs?

A. No.

Q. Let's turn your chair back around. After he put his mouth where you go to the bathroom, did he stay there very long?

A. No.

Q. Okay. Did he do anything after that?

Let me ask you this: Did he have any shirt on when he did this?

A. No.

Q. Did he have his pants on when he did this?

A. Yes.

Q. Okay. After he got through doing this, did he do anything else?

A. Yes.

Q. All right. I'm going to ask you to speak up loudly.

A. Yes.

Q. What did he do?

A. Umm—he pulled his pants down.

Q. Can you say that a little bit louder? I don't think that I can hear you.

A. He pulled his pants down.

Q. Did he have any undershorts on?

A. Yes.

Q. Did he pull those down or leave those up? Before you answer that, let's put your hands back in your lap, okay? Can you put your hands—all right.

Did he leave his undershorts up or down?

A. Down.

Q. He pulled them down?

A. Yes.

Q. When he pulled his undershorts down, could you see where he goes to the bathroom?

A. Yes.

Q. Okay. Courtney, can you look around here? Do you know what this is?

A. It's a man.

Q. And have I shown you a picture like this before?

A. Yes.

Q. Okay. Courtney, when he pulled his pants down, you said that you could see where he went to the bathroom. I'm going to ask you to make one more mark. Can you mark what you saw?

Just place an "X" where you saw it.

A. [Witness complies.]

Q. Courtney, after he pulled his pants and his undershorts down, did he do anything then—well, did you have your pants and panties still down?

A. Yes.

Q. What did he do after he pulled his down?

A. He got on top of me.

Q. I'm sorry, sweetie, you'll have to speak up louder and you'll have to take your finger out of your mouth.

A. He got on top of me.

Q. Okay. And when he got on top of you, what did he do? Did he just lay on top of you?

A. Yes.

Q. Were you still on the bed?

A. Yes.

Q. Did he—did you ever touch where he goes to the bathroom?

A. Yes.

Q. What did you touch it with?

A. My hand.

Q. Your hand? How come you touched it?

A. He told me to.

Q. I'm sorry. You'll have to speak up.

A. He told me to.

Q. Okay. Did he stay on you very long?

A. No.

Q. Did he ever try to stick where he goes to the bathroom where you go to the bathroom?

A. No.

Q. What happened after that?

A. I got to go home.

Q. Okay. When he got off you, was there anything on you?

A. Yes.

Q. I'm sorry, you'll have to repeat that.

A. Yes.

Q. Do you know what was on you?

A. [Nods no.]

Q. What did it feel like?

A. Sticky.

Q. Okay, what—did you do anything with that?

Did you get it off of you?

A. Yes.

Q. How did you get it off of you?

A. His mother's nightgown.

Q. Who gave you that?

A. John-John's brother.

Q. How did you get it off with her nightgown?

A. It was still wet.

Q. Did anything else happen after that?

A. No, that's when I got to go home.

Q. All right. Did he tell you anything before you went home?

A. Not to tell anybody.

The prosecutrix further testified she went home, and went to the bathroom. Her grandparents, with whom she lived, were asleep so she went to a neighbor's apartment and told a friend what had happened. The information was relayed on to her grandfather, who went to Kirk's apart-

ment. The police also arrived, and Kirk was arrested.

Kirk testified the prosecutrix came to his family's apartment and asked if the younger brother could come out and play. Kirk told her the brother was grounded but she could come in. Kirk stated the children were "messing up" the apartment and he spanked the younger brother; that the prosecutrix's story was apparently to get even with Kirk for spanking the brother.

It is apparent that the eight year old prosecutrix did not use precise anatomical words in describing the parts of the bodies involved in the incident, however she is not required to do so. Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of the statute, the evidence will be sufficient to support a conviction regardless of the unsophisticated language the child uses. *Clark v. State,* 558 S.W.2d 887 (Tex.Cr.App.1977). We have related in detail the pertinent testimony of the prosecutrix in this case. This testimony was sufficient to justify the jury's verdict. Kirk's first ground of error is overruled.

Kirk's second ground of error complains that the trial court abused its discretion in permitting the prosecutrix to testify. This complaint is made for the first time on appeal. At the trial, the prosecutor questioned the prosecutrix as to the effect of an oath and the results of failing to tell the truth. Again, the pertinent portions of her testimony have been detailed in this opinion, and while some leading questions were asked, they were permissable in this case. The question of competency of witnesses is for the trial court to resolve. Upon review, a ruling by the trial court will not be disturbed unless an abuse of discretion is shown. In determining whether there has been an abuse of discretion, the appellate court will review the entire testimony of the witness in addition to that given in the hearing on competency. The fact that inconsistent statements as to the details of the offense or that much of the testimony is in response to leading questions does not render the witness incompetent. *Clark v. State, supra.*

In absence of an objection, a preliminary examination by the court is not required, and there was no error in the prosecutor's questions to the witness concerning her competency. *Franco v. State,* 492 S.W.2d 534 (Tex.Cr.App.1973). Kirk's second ground of error is overruled.

Judgment affirmed.