Joaquin PEREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–602–CR.

Court of Appeals of Texas,
Corpus Christi.

June 13, 1996.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Traci A. Sellman, Mark M. Talbot, Asst. Criminal District Attorneys, Rene Guerra, District & County Attorney, Edinburg, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant, Joaquin Perez, guilty of aggravated sexual assault of a child under the age of fourteen, found the enhancement allegations to be true, and assessed punishment at fifteen years' confinement. By three points of error, appellant complains of testimony concerning the use of anatomically correct dolls. By one additional point of error, he contends that the trial court erred in admitting opinion testimony regarding the credibility of the victim. We affirm.

On April 4, 1994, appellant and his wife, Griselda Lee, argued while they were at a bar. Lee left the bar and returned home to check on her eight-year-old daughter[1] who was at a neighbor's house. After learning that the child was asleep, Lee left her at the neighbor's house for the night and went home and watched television for awhile. She then decided to leave again. As Lee was leaving the house, she saw appellant arriving. Lee, not wanting to continue the earlier argument, hid in the bedroom closet. A short time later, appellant left and returned with Lee's daughter.

After the child went to bed, appellant entered the bedroom, lowered the clothing that covered his and the girl's genitals, and laid on top of her while she was on her stomach. The child testified that appellant placed his "private part" between her legs, touching her "private part," and began to move up and down.

Hearing noise in the bedroom, Lee left the closet, turned on the light, and discovered appellant lying in the child's bed while the two were only partially clothed. The child was sent to the bathroom where she cleaned "water" from her private parts. After a

---

1. The child is appellant's stepdaughter.

brief fight with Lee, appellant left the house, and the police were called. Appellant was arrested and charged with aggravated sexual assault of a child under the age of fourteen. TEX. PENAL CODE ANN. § 22.021 (Vernon 1994).[2]

The child related details of the incident to several persons, including Diana Cadriel, a social worker for Child Protective Services ("CPS"). As the child explained what happened, Cadriel asked her to use anatomically correct dolls to "show" what she was describing. Before trial, appellant filed a motion in limine seeking to prohibit the admission of evidence concerning the use of the dolls. During a hearing on the motion, Cadriel testified that the dolls were used to facilitate the explanations of young children who have a difficult time verbalizing or who do not know accurate names for body parts. She said that the child was asked to use the dolls to show what had happened. After Cadriel's testimony, arguments by counsel, and an examination of the dolls, the trial court denied appellant's motion in limine. The court also ruled that the dolls could be used during the trial.

By his first, second and third points of error, appellant complains that the trial court erred in allowing Diana Cadriel to testify about the use of the anatomically correct dolls because: 1) their scientific reliability was not established, 2) they were overly suggestive to the child and prejudicial to appellant, and 3) it was not established that the dolls were anatomically correct. Appellant contends that such testimony was used to bolster the child's testimony. He further argues that the use of anatomically correct dolls is controversial and unreliable.

■ An appellate court should not set aside the trial court's rulings to exclude or admit evidence absent a showing in the record that the trial court has abused its discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990)(op. on reh'g). All relevant evidence is admissible unless it falls within an exception provided by law or by other rules of evidence. TEX.R.CRIM. EVID. 402. Relevant evidence is that "having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R.CRIM. EVID. 401. The trial court may exclude relevant evidence "if its probative value is outweighed by the danger of unfair prejudice[.]" TEX.R.CRIM. EVID. 403.

■ Appellant contends that the State did not establish the scientific reliability of using the anatomically correct dolls as required by *Kelly v. State,* 824 S.W.2d 568, 573 (Tex. Crim.App.1992). At issue in *Kelly* was the admission of novel scientific evidence. *Id.* However, testimony regarding the use of dolls while interviewing young victims or the actual use of dolls during the child's testimony appears in published opinions dating back at least fifteen years and cannot be considered novel. *See Montgomery,* 810 S.W.2d at 396 (caseworker testimony regarding child's use of dolls during interview); *McKenzie v. State,* 617 S.W.2d 211, 214 (Tex.Crim.App.1981)(demonstrating for jury with child's favorite doll); *Kirk v. State,* 653 S.W.2d 647, 649 (Tex.App.—Fort Worth 1983, no pet.)(using anatomically correct doll during child's testimony). Moreover, after reviewing the record, we conclude that Cadriel's testimony about the use of the anatomically correct dolls while interviewing the child was not scientific evidence.

Cadriel testified that an interview is conducted on a one-to-one basis between the caseworker and the victim. Four anatomically correct dolls are laid out where the child can see them. Initially, the caseworker asks general questions intended to calm and gain the confidence of the child. Next, the caseworker asks if the child can name any of the dolls' body parts. If able, the child will point to a part and give the name. After completing this procedure, the caseworker asks if someone has done anything to the child that the child thought was wrong or did not like. When the child is young or incapable of verbalizing the events, the caseworker will ask the child to demonstrate with the dolls. The child selects the dolls and is not

---

**2.** Although this version of § 22.021 became effective on September 1, 1994, the amendments made no substantive changes to the relevant provisions.

coached about how to demonstrate. This procedure was followed when Cadriel interviewed appellant's stepdaughter.

The record further shows that the child's response to Cadriel's question about another person's inappropriate actions toward her was immediate. After the child finished her explanation, Cadriel asked, "Could you show me?" Appellant's stepdaughter then chose two dolls and demonstrated what she had experienced. This is the only testimony that Cadriel provided for the jury regarding the use of the dolls during the interview. She did not repeat the specific details of the child's testimony nor did she demonstrate the child's use of the dolls.

Although we agree that anatomically correct dolls could pique the curiosity of a young child, this curiosity is far different than an eight-year-old knowing how to demonstrate a sex act. The interview procedure described by Cadriel did not suggest to appellant's stepdaughter how to use the dolls in demonstrating her experiences of April 4, 1994. The dolls merely provided one method the child could use to explain herself and a way the caseworker could ascertain that she was not reading more into the child's words than was intended. Using the dolls during the interview process, in the manner described by Cadriel, is no less demonstrative than using maps, diagrams, and drawings to help clarify a point during trial. *See Reyna v. State,* 797 S.W.2d 189, 193 (Tex.App.—Corpus Christi 1990, no pet.).

■ Appellant contends that the dolls were not shown to be anatomically correct. At the pre-trial hearing on appellant's motion in limine, however, Cadriel testified that the dolls used during the interview were provided to caseworkers by CPS and that she believed they were correct. At appellant's request, the trial court examined the dolls used during the interview and the dolls the State wished to use at trial. One issue before the court at the time of the request was the anatomical correctness of the dolls. After the examination, the trial court determined that the dolls provided by CPS could be used, if necessary, for demonstration purposes. Based on Cadriel's testimony and the trial court's visual inspection of the dolls, we conclude that the court implicitly found that the dolls furnished by CPS were anatomically correct.

■ Although most of the evidence set forth above was presented at the trial, essentially the same information was presented at the pre-trial hearing. After hearing this evidence, listening to the argument of counsel, and inspecting the dolls, the trial court could properly find that Cadriel's testimony was relevant to show the child's ability to explain what had happened. Moreover, Cadriel's testimony established the link between the child, CPS, and Dr. Jorge L. Kutugata, who examined the victim, at the request of CPS, for evidence of penetration.

■ Appellant also contends that Cadriel's testimony was prejudicial. After reviewing the record, we find that Cadriel's testimony about the dolls was neutral—it did not provide specific details of the alleged sexual abuse. Because Cadriel merely testified about the interview process and did not repeat the child's testimony, offer an opinion about the child's truthfulness, or state that the child was sexually abused, the evidence did not bolster the child's credibility. *See Cohn v. State,* 849 S.W.2d 817, 818, 820 (Tex. Crim.App.1993). In addition, we fail to see how a description of the interview process could be more prejudicial than the direct, unequivocal testimony of appellant's eight-year-old stepdaughter, the mother's account of the incident, or Dr. Kutugata's narration of the details as related to him by the child.

We hold that the trial court did not abuse its discretion by admitting testimony regarding the use of anatomically correct dolls during the interview process. We overrule appellant's first, second and third points of error.

■ By his fourth point of error, appellant contends that the trial court erred by allowing Cadriel to offer an opinion as to the credibility of the child. Specifically, appellant complains of Cadriel's expert opinion that the child was not fantasizing during the interview. The State argues that Cadriel was offering an opinion on one of many factors she considers in a sexual abuse case and

that her opinion was not direct testimony on the child's truthfulness.

■ Rule 702 allows expert testimony in the form of an opinion on scientific, technical, or other specialized knowledge, if it will assist the jury's understanding of the evidence. TEX.R.CRIM. EVID. 702. Expert testimony which assists the jury in determining an ultimate fact is admissible, but expert testimony which *decides* an ultimate fact for the jury, such as "a direct opinion on the truthfulness of the child," crosses the line and is not admissible under Rule 702. *Yount v. State,* 872 S.W.2d 706, 708 (Tex.Crim.App.1993); *Duckett v. State,* 797 S.W.2d 906, 914 (Tex. Crim.App.1990), *overruled on other grounds,* 849 S.W.2d 817 (Tex.Crim.App.1993).

As we have previously shown, Cadriel's testimony dealt mainly with the interview procedure used with appellant's stepdaughter. The issue of fantasy was introduced on cross-examination when appellant's counsel asked Cadriel if children seeing the anatomically correct dolls for the first time could have sexual fantasies. Cadriel was uncertain and said it depended on the particular child.

On redirect, Cadriel testified that some children do have sexual fantasies and that this is one of many factors she considers during a sexual abuse case. The State then started to ask her opinion concerning appellant's stepdaughter regarding this factor, but appellant objected in the middle of the question on the ground that Cadriel was offering an expert opinion. The trial court then removed the jury from the courtroom and allowed the State to ask the entire question and Cadriel to respond. During *voir dire* examination, Cadriel admitted that she was not an expert in fantasies. Appellant argued that her opinion should be excluded on that basis. The State responded that Cadriel was testifying as an expert on child sexual abuse and that the testimony at issue dealt with one of many factors considered in such a situation. The court overruled appellant's objection and allowed the State to ask the question exactly as it was worded in the jury's absence. After the jury was seated, the prosecutor asked Cadriel the following questions:

Q: Mrs. Cadriel, let me ask you this question, again. Did you say that one of the factors that you look at when you're interviewing a child is to determine whether or not they are indeed fantasizing about something, whether they've made something up?

A: Yes.

Q: Okay. And that is one factor that you look at in relationship to that child's case?

A: Correct.

Q: One of many factors?

A: Correct.

Q: Okay. In the case of [appellant's stepdaughter], did you look at that? Were you looking to see whether or not she was fantasizing?

A: Yes, I did.

Q: In your opinion, as of that one factor, whether or not she was fantasizing about this or making it up, what was your opinion as to that?

A: That she was not fantasizing, that she was not making it up.

Q: Okay. Right. But that, in and of itself, is not—that's not your sole determination as to whether or not there's sexual abuse in the case? That's only one factor; correct?

A: Correct.

We conclude that Cadriel's testimony was not a direct opinion about the child's truthfulness. Cadriel emphasized that whether or not the child is fantasizing is one of many factors considered in a sexual abuse case. Her opinion that appellant's stepdaughter was not fantasizing did not eliminate other possible sources of untruth raised by appellant's questioning of the child and mother, such as coaching, misinterpretation, or not remembering details. We hold that the trial court did not err by allowing Cadriel to opine that the child was not fantasizing during the interview.

■ We reverse a criminal case when we find error in the proceedings, unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP. P. 81(b)(2).

Even if we had found that the trial court erred in admitting Cadriel's testimony, after reviewing the testimony of appellant's step-daughter, his wife, and Dr. Kutugata, we would hold beyond a reasonable doubt that such error made no contribution to the conviction or to the punishment. *See Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App. 1989). We overrule appellant's fourth point of error.

We AFFIRM the trial court's judgment.