**Opinion issued June 20, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00706-CR

———————————

**JOHN DESMOND CRAWFORD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Case No. 18624**

---

## MEMORANDUM OPINION

A jury convicted John Desmond Crawford of two counts of aggravated sexual

assault of a child and one count of indecency with a child.[1] He was sentenced to 20

---

[1]    *See* TEX. PENAL CODE §§ 21.11(a)(1), 22.021(a)(1)(B)(i).

years' imprisonment.[2] On appeal, Crawford contends that the trial court erred by admitting his confessions and the testimony of multiple outcry witnesses; the inadmissible outcry testimony improperly bolstered the complainant's testimony; and the cumulative effect of these errors was harmful.

We affirm.

## Background

In July 2018, Crawford picked up Haley, the complainant, and her sister, Mary, to hang out.[3] At the time, Crawford was 19 years old, Mary was 15 years old, and Haley was 13 years old. They drove to a gas station, a Wal-Mart, a park, and, finally, an area near train tracks and a "climbing tower."

At the park, Crawford told Haley to earn a dollar by walking ten times around a pond. According to Mary, while Haley walked around the pond, she and Crawford had sex in the vehicle. And they had sex again when they parked near the train tracks.

During the second encounter, Haley was asleep in the vehicle's front seat but woke up and saw Crawford having sex with Mary. Crawford tried to entice Haley to join, put his hand under her clothing, and pinched her breasts. Haley exited the

---

[2]  The jury assessed 10 years' confinement for each aggravated-sexual-assault count and four years' confinement for the indecency count. The aggravated-sexual-assault punishments run consecutively, and the indecency punishment runs concurrently.

[3]  We use pseudonyms to refer to the child complainant and her family members. *See* TEX. CONST. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(3).

vehicle and sat by the train tracks until Mary came to tell her that Crawford wanted to talk. Haley returned to the vehicle, and Mary went to climb the nearby tower.

Haley got into the vehicle's backseat, where Crawford was sitting and wearing boxer shorts. Crawford asked if Haley was a virgin, and she said she was. He told her that he wanted to show her what teenagers do. He began kissing her neck, touching her breasts, and removing her shirt. Then, he laid her down in the backseat, pulled her pants down to her knees, and penetrated her vagina with his fingers. Haley told Crawford to stop, but he did not. He performed oral sex on her, penetrating her with his tongue and biting her. Haley testified that Crawford also touched her body and penetrated her vagina with his penis. She said that she experienced pain and, after, had a white liquid on her. Haley did not tell Mary what had happened.

Eventually, a Grimes County deputy arrived looking for the girls because they had run away from home. Haley did not tell the deputy that she had been sexually assaulted. Haley recalled Mary telling her not to say anything; otherwise, Mary would hate Haley, never forgive Haley, and kill herself.

Haley later told her mom, Jane, about the abuse, and the police investigated. Crawford was charged with two counts of aggravated sexual assault against Haley— one for digital penetration and one for oral penetration—and one count of indecency with a child by contact against Haley. He pleaded not guilty and proceeded to trial.[4]

---

[4]    Before trial, the State abandoned a charge of sexual assault against Mary.

## A.    The Outcries

Three outcry witnesses testified. Jane, the first outcry witness, testified that, in December 2018, Haley revealed that something had happened with Crawford. Haley initially did not say what it was, and Jane did not suspect anything sexual. But later, in early April 2019, Haley told Jane that Crawford took her shirt off, penetrated her vagina with his fingers, performed oral sex on her, and fondled her breasts. Haley later shared in a letter to Jane that Crawford had also forced Haley to have sex.

The second outcry witness was J. Conrad, who taught classes at Haley's church. On April 28, 2019, during a class on abstinence, Haley asked, "What do you do if they have a gun?" After class, Conrad asked Haley if she was okay. Haley told Conrad that she had been raped, the man had a gun, and she felt guilty because she snuck out of the house to meet him and should not have been there.

The final outcry witness was M. Martinez, a forensic interviewer at Scotty's House Children's Advocacy Center. She interviewed Haley in May 2019. Haley told Martinez that Crawford picked her and her sister up, drove them to an area near train tracks, and sexually assaulted her. Haley told Martinez that Crawford showed her a firearm, kissed her neck, undressed her from the waist down, performed oral sex on her, and squeezed her breasts, even though she told him to stop several times.

## B.     The Interviews

The police interviewed Crawford twice. The first interview occurred in May 2019 with Lieutenant J. Ellis and Investigator N. Malmstrom. Lieutenant Ellis testified that after the forensic interviews with Mary and Haley, he conducted a noncustodial interview with Crawford at the Hearne Police Department. According to Ellis, Crawford was not in custody or under arrest and was free to leave. Ellis did not advise Crawford of his *Miranda* rights.[5]

During the interview, Crawford explained that he met Haley and Mary a few years earlier as a youth advisor at a church camp. He picked them up from their home to watch fireworks but did not know they had run away. He first drove them to a gas station and then to a Wal-Mart. After, they went to a park and then to another gas station so the girls could use the bathroom. At the park, Crawford asked Haley if she wanted to walk around the pond while he and Mary stayed in his vehicle. Finally, they drove to an area near train tracks to eat and talk.

Lieutenant Ellis confronted Crawford with the sexual assault allegations, which Crawford initially denied. But Crawford later admitted to having sex with Mary three times that night—once in the car while Haley walked around the pond and twice while the vehicle was parked near the train tracks. They stopped when Haley, who was outside the vehicle, saw them having sex. Crawford remembered

---

[5]     *See Miranda v. Arizona*, 384 U.S. 436, 441 (1966).

Mary getting out of the vehicle and talking to Haley about what she saw before both girls returned to the vehicle.

Lieutenant Ellis also confronted Crawford about whether he asked Haley to come back into the vehicle so he could "show her some things . . . because she was a virgin" and engage in sexual activity with her. Crawford denied doing anything with Haley. He suggested that Haley made up a story because Mary had been "hurt" in the past. Crawford said, if anything had happened, it was accidental. Ellis told Crawford that Ellis did not expect "a good outcome" for Crawford "in front of 12 jurors, potentially." Crawford then admitted to "playing around" with Mary and Haley. But he claimed that any touching was accidental and there was no penetration.

Lieutenant Ellis testified that Crawford did not maintain eye contact during the interview, so he accused Crawford of lying and told him to be truthful. At that time, Crawford said he had consensual sexual intercourse with Mary multiple times that night and did not wear a condom. Asked about Haley, Crawford denied any contact and said she was too young.

After the interview, Lieutenant Ellis asked Crawford for permission to photograph and search his vehicle. Crawford agreed. Ellis also gave Crawford his contact information. Crawford reached out to set up a second interview.

Crawford's second interview took place two days later with Lieutenant R. Salazar. Salazar is based in Austin, Texas, and specializes in assisting local

6

authorities with suspect interviews. She did not advise Crawford of his *Miranda* rights and instead had him sign a consent form. The interview took place in an investigation room at the Grimes County Jail.

At the beginning of the nearly five-hour interview, Lieutenant Salazar explained to Crawford that law enforcement was investigating the sexual assault of a child, Haley. Crawford stated that he did not remember doing anything to her. Salazar testified that this usually means the interviewee does not want to tell the truth. When Salazar asked about Crawford's relationship with Mary, Crawford denied being in one but admitted that they had sex two or three times on the night in question.

Lieutenant Salazar accused Crawford of lying about what happened with Haley. Shortly after, Crawford admitted pinching Haley's nipples through her clothes but denied penetrating her. Salazar traced an outline of Crawford's hand on paper and told him to say how many fingers he used to penetrate Haley and how deep they went. Crawford relented and admitted to touching Haley's vagina. But he still denied penetration. Salazar told Crawford that Haley had shared the details with law enforcement. Crawford maintained that he did not have sex with Haley but agreed with Salazar's statement that he went "down on her." After being told that "going down" was slang for oral sex, Crawford said that he misunderstood and had not done that. Eventually, Crawford admitted to vaginally penetrating Haley with

his middle finger. But he continued to deny doing any more than that. When asked about firearms, Crawford said that he owned a BB gun and had shown it to Mary and Haley when they were in his vehicle.

Lieutenant Salazar then provided a short break, and Crawford went to the bathroom. About four hours into the interview, on Salazar's recommendation, Crawford wrote a statement admitting that he reached over, "[grazed Haley's] breast," and forced himself on her, even when she told him to stop. After reading the statement, Salazar told Crawford to write a letter accepting responsibility and apologizing to Haley, which he did. Salazar left shortly after Crawford wrote the letter, and Lieutenant Ellis ended the interview by explaining what the next steps in the investigation would be.

### Motion to Suppress: Inadmissible Statements

Crawford contends that his confession was inadmissible because he did not receive his *Miranda* or statutory warnings while in custody. *See Miranda v. Arizona*, 384 U.S. 436, 441 (1966); TEX. CODE CRIM. PROC. art. 38.22.

#### A. Standard of Review

We review the denial of a motion to suppress for abuse of discretion under a bifurcated standard. *See Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). We give almost total deference to the trial court's factual assessment of the

circumstances surrounding the questioning and review de novo the legal determination of whether the person was in custody under those circumstances. *Id.*

When the trial court denies a motion to suppress without any findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit fact findings that support its ruling if those findings are supported by the record. *Id.* We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

**B.    Applicable Law**

Under *Miranda* and article 38.22 of the Texas Code of Criminal Procedure, statements produced by custodial interrogation are inadmissible unless the accused is first warned that he has the right to remain silent, his statement may be used against him, and he has the right to hire a lawyer or have a lawyer appointed. *See Miranda*, 384 U.S. at 441; TEX. CODE CRIM. PROC. art. 38.22, § 2(a). Under article 38.22, the accused must also be warned that he may terminate the interview at any time. TEX. CODE CRIM. PROC. art. 38.22, § 2(a)(5). "Custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

Custody is determined from (1) the circumstances surrounding the interrogation and (2) whether a reasonable person in such circumstances would have

felt that he was not free to leave. *Wexler*, 625 S.W.3d at 167. The court must apply an objective test to determine whether there was restraint on freedom of movement to a degree associated with arrest. *Id.* The "reasonable person" standard presupposes an innocent person. *Id.*

The Court of Criminal Appeals outlined four general situations that may constitute custody. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). The first three situations are when (1) the suspect is physically deprived of his freedom in any significant way; (2) law enforcement tells the suspect not to leave; or (3) law enforcement creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted. *Wexler*, 625 S.W.3d at 167–68 (citing *Dowthitt*, 931 S.W.2d at 255). In these three situations, a suspect's freedom must be restricted "to the degree associated with an arrest," not just that of an investigative detention. *Id.* The fourth situation is when probable cause has been manifested to the suspect, law enforcement did not tell the suspect he can leave, and, considering the surrounding circumstances, a reasonable person would believe he is restricted to a degree associated with arrest. *Id.*

## C.    First Interview

Several facts tend to show that Crawford's first interview with Lieutenant Ellis and Investigator Malmstrom in May 2019 was noncustodial: Crawford voluntarily drove himself to the interview at the Hearne Police Department; he was

10

not handcuffed; he was told he was not "in custody" and would not be "in custody" at the end of interview; the door to the interview room was unlocked; he was told that he was free to leave at any time and was not required to talk to law enforcement; the interview was less than an hour long; and he drove himself home after the interview. But other facts tend to show it was custodial, including that probable cause manifested when Ellis and Malmstrom repeatedly confronted Crawford about sexually assaulting Mary and Haley; Crawford admitted having sex with Mary, a minor; and the door to the interview room was closed.

As to the first three *Dowthitt* situations, viewing the evidence in the light most favorable to the trial court's ruling and examining the totality of the circumstances, we conclude that Crawford's freedom of movement was not restrained to the degree associated with a formal arrest. *See id.* at 167; *Dowthitt*, 931 S.W.2d at 255. As to the fourth *Dowthitt* situation, probable cause to arrest Crawford manifested when (1) Lieutenant Ellis told Crawford of the report that he had sexually assaulted two minors and (2) Crawford admitted to having sex with Mary. *See Dowthitt*, 931 S.W.2d at 255–56. That probable cause existed to arrest Crawford, however, does not alone make the interview custodial. *See id.* at 257. Considered alongside the other facts, the circumstances support the trial court's determination that Crawford was not in custody when he gave the statement from his first interview. *See, e.g.*, *Garcia v. State*, 106 S.W.3d 854, 858–59 (Tex. App.—Houston [1st Dist.] 2003, pet.

11

ref'd) (noncustodial when suspect voluntarily went to police station and, after being told he could leave, voluntarily gave videotaped statement); *Garza v. State*, 34 S.W.3d 591, 596–98 (Tex. App.—San Antonio 2000, pet. ref'd) (discussing significance of telling suspect he is free to leave).

## D.    Second Interview

A few hours after the initial interview, Crawford emailed Lieutenant Ellis to speak again. And two days later, he was interviewed by Lieutenant Salazar. Crawford does not dispute that he attended voluntarily, only that the manifestation of probable cause along with other circumstances turned a noncustodial interview into a custodial one.

In considering the totality of the circumstances surrounding the interrogation, several facts tend to show that it was noncustodial: Crawford again drove himself to the interview, this time located at the Grimes County Sheriff's Office, which was in the same building as the county jail; he was not handcuffed; he signed a consent form which admonished him of his "right to stop at any time";[6] the door to the interview room was unlocked; he took a bathroom break; and he drove himself home

---

[6]    Above Crawford's signature, the form states that Crawford was "fully advised, and with full knowledge and understanding," "voluntarily agree[ed] to allow a Texas Department of Public Safety [sic] to [him] regarding [s]exual assault of a [c]hild." Additionally, the form recites that Crawford consented of his "own free will" and not because of "duress, threats, [] coercion," or promises of "anything of value, reward, or immunity," and that he had a "right to stop [illegible] at any time [he] desire[d]."

after the interview was complete. But there are also facts that tend to show the interview was custodial such as the manifestation of probable cause when Lieutenant Salazar repeatedly confronted Crawford about sexually assaulting Mary and Haley; that Crawford admitted to sexually assaulting a minor, Haley; that the door to the interview room was closed; that he was not told he was free to leave before or during the interview; and the interview lasted about five hours.

Again, when considering the first three *Dowthitt* situations, viewing the evidence in the light most favorable to the ruling and examining the totality of the circumstances, we conclude that Crawford's freedom of movement was not restrained to the degree associated with a formal arrest. *Wexler*, 625 S.W.3d at 167; *Dowthitt*, 931 S.W.2d at 255.

But the fourth *Dowthitt* situation requires further consideration. Lieutenant Salazar manifested probable cause to arrest Crawford multiple times when she told Crawford that he was under investigation for sexual assault of two minors, and Crawford admitted to sexually assaulting Haley. But, as discussed, probable cause alone does not make an interrogation custodial, it is just one consideration when examining the totality of the circumstances. *See Dowthitt*, 931 S.W.2d at 257. The facts show that Crawford initiated contact after the first interview, asking for another opportunity to speak to law enforcement. Additionally, the consent form he signed at the beginning of this interview informed him that he had "a right to stop at any

13

time." Considering these facts, along with the rest of the circumstances surrounding the second interview, there was support for the trial court's determination that Crawford was not in custody when he confessed during the second interview. *See, e.g.*, *Smith v. State*, 779 S.W.2d 417, 428 (Tex. Crim. App. 1989) (eight hours of questioning without food did make confession involuntary); *Bell v. State*, 169 S.W.3d 384, 391–92 (Tex. App.—Fort Worth 2005, pet. ref'd) (eight hours of questioning in handcuffs and leg shackles did not make confession involuntary when accused never stated he wanted to stop questioning or speak to attorney and never requested food, water, or bathroom breaks).

Accordingly, we overrule Crawford's first issue.

### Multiple Outcry Witnesses

Crawford contends that the trial court abused its discretion by allowing outcry testimony from multiple witnesses about the same event.

**A.    Standard of Review**

A trial court has broad discretion to admit outcry witness testimony. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Buentello v. State*, 512 S.W.3d 508, 516 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). We will not reverse the trial court's decision to admit outcry witness testimony unless it falls outside the zone of reasonable disagreement. *Buentello*, 512 S.W.3d at 516–17.

**B.  Applicable Law**

Hearsay statements, while generally inadmissible, may be admitted if public policy supports their use and the circumstances surrounding the making of those statements indicate their reliability. *See, e.g.*, *Garcia*, 792 S.W.2d at 91 (by enacting "child outcry" hearsay exception in TEX. CODE CRIM. PROC. art. 38.072, Legislature "was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children"). Article 38.072 of the Texas Code of Criminal Procedure governs the admissibility of outcry statements in the prosecution of aggravated sexual assault of a child. TEX. CODE CRIM. PROC. art. 38.072, § 1 (2022).[7] This statute applies to "statements that describe the alleged offense" and that were made (1) by the child against whom the offense was allegedly committed and (2) to the first person, 18 years old or older, other than the defendant, to whom the child made a statement about the offense. *See id.* art. 38.072, § 2(a)(1)–(3); *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). Such statements are not inadmissible hearsay if certain requirements, which are not at issue here, are satisfied. TEX. CODE CRIM. PROC. art. 38.072.

---

[7]   We apply and reference the version of the statute that was in effect at the time of trial in 2022. *See* Acts 2023, 88th Leg., ch. 93 (S.B. 1527), § 3.01, eff. Sept. 1, 2023 (evidence admitted in criminal proceedings that commence before Sept. 1, 2023, is governed by the former law in effect at that time).

The statement must describe the alleged offense "in some discernible manner" and must be more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. In general, the proper outcry witness is the first adult to whom the child abuse victim describes "how, when, and where" the abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd). If the child makes only a general allusion to the first adult and gives a more detailed account to a second adult, the second adult may be the proper outcry witness. *See Garcia*, 792 S.W.2d at 91.

The admissibility of outcry witness testimony is not person-specific, but event-specific. *Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Hearsay testimony from more than one outcry witness may be admissible under article 38.072 if the witnesses testify about different events. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd) (if child described one type of abuse to one witness and different type of abuse to second witness, second witness may testify as outcry witness about distinct offense). However, "[t]here may be only one outcry witness per event." *Lopez*, 343 S.W.3d at 140.

The erroneous admission of outcry testimony is non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Under Texas Rule of Appellate Procedure 44.2(b), non-constitutional error must be disregarded unless

16

it affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). This means we will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have "fair assurance that the error did not influence the jury[] or influenced the jury only slightly." *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Our "focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict." *Id.* at 93–94.

**C.     Error**

To determine whether the trial court should not have allowed any of the three outcry witnesses to testify, we must consider whether the witnesses testified about distinct events. *See Polk*, 367 S.W.3d at 453; *Berg v. State*, No. 01-22-00248-CR, 2023 WL 5616200, at *21 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication) (multiple outcry witness may be designated when child is victim of more than one sexual offense and outcry witnesses are not testifying about same event). The State points to case law defining a distinct event as the "offense as alleged in the indictment." *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd). The offenses as alleged in the indictment include (1) aggravated sexual assault by digital penetration of Haley's vagina; (2) aggravated sexual assault by oral penetration of Haley's vagina; and (3) indecency by touching Haley's breasts.

17

The first adult Haley told about the abuse was Jane. Jane testified that Haley told her about digital penetration, oral penetration, and touching of her breasts. The second outcry witness was Conrad. Haley told Conrad that she had been raped and that the assailant had a gun. The third outcry witness, Martinez, testified that Haley told her about digital penetration, oral penetration, and touching of her breasts. When telling each of these witnesses about the sexual assault, Haley never alleged that it occurred multiple times or on separate occasions. Instead, the incident occurred in the same location and the acts were by the same person in the same course of conduct.

Because Haley first described the alleged offenses to Jane, Jane was the appropriate outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3) (limiting outcry testimony to first person to whom child made a statement); *Lopez*, 343 S.W.3d at 140; *see also Nino v. State*, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (trial court abused its discretion by designating someone other than first adult to whom child made statement about alleged sexual abuse as outcry witness); *but see Reynolds v. State*, 227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.) (trial court did not abuse its discretion by allowing one outcry witness to testify about child's report involving breasts and another outcry witness to testify about child's report involving genital area).

As to Conrad, the record shows that Haley did not describe any of the alleged offenses beyond making a general allusion to abuse. *See Bargas v. State*, 252 S.W.3d 876, 894–95 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (complainant telling person that defendant touched her "private parts" did not describe the alleged offense in discernible manner); *see also Garcia*, 792 S.W.2d at 91. Because Conrad was not the first adult that Haley disclosed the abuse to in a discernable manner, Conrad's outcry testimony was inadmissible. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3); *Bargas*, 252 S.W.3d at 894–95.

Lastly, because Martinez testified to the same events as Jane, whom Haley previously told about Crawford's offenses, Martinez's testimony was also inadmissible. *See Reynolds*, 227 S.W.3d at 369; *Berg*, 2023 WL 5616200, at *21 (multiple people may not testify to same event just because it was told to them); *see also Bays*, 396 S.W.3d at 585 (allowing child complainant's hearsay describing alleged offense so long as statement is made to first adult person to whom child disclosed). Because Jane was the only proper outcry witness, we must review the erroneous admission of the other outcry testimony.

## D.    Harm

Error in admitting hearsay under article 38.072 is non-constitutional error. *See Johnson*, 967 S.W.2d at 417; *see also* TEX. R. APP. P. 44.2(b). Both this Court and our sibling court in Houston have held that such error is harmless if the same or

similar evidence is admitted without objection at another point in the trial.[8]

*Lamerand v. State*, 540 S.W.3d 252, 259 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (any error in admitting outcry testimony was harmless because complainant gave similar testimony); *Nino*, 223 S.W.3d at 754 (improperly admitted outcry testimony was harmless because complainant gave "substantially the same account of the offense" in her testimony); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd) (error in admitting outcry testimony was cured when other similar testimony was given without objection, including from complainant).

The jury received evidence about the sexual assaults from two sources other than the three outcry witnesses. First, Crawford confessed to vaginally penetrating Haley with his fingers, touching and pinching Haley's breasts, and "going down" on Haley before he recanted. Second, Haley testified to the same details as the three outcry witnesses. She stated that Crawford touched and pinched her breasts,

---

[8] Other Texas courts have concluded that erroneously admitted outcry testimony is not harmless when a child complainant gave substantially the same testimony without objection. *See Sandoval v. State*, 409 S.W.3d 259, 289 (Tex. App.—Austin 2013, no pet.) (defendant did not waive complaint about outcry testimony by failing to object to complainant's testimony because complainant's testimony was not objectionable); *but see Koury v. State*, 684 S.W.3d 537, 551 (Tex. App.—Austin 2024, pet. ref'd) (applying, in dicta, harmless error doctrine to "backdoor hearsay" of interviewer). Absent contrary direction from a higher court, we follow our own precedent. *See Ex parte Thomas*, 623 S.W.3d 370, 381–82 (Tex. Crim. App. 2021) (discussing stare decisis).

vaginally penetrated her with his fingers, performed oral sex on her and penetrated her with his tongue, and showed her a gun. Because the same or similar evidence about which Crawford complains was admitted without objection through Crawford's confessions, in part, and during Haley's testimony, the error was harmless. *See Lamerand*, 540 S.W.3d at 259–60; *Duncan*, 95 S.W.3d at 672.

We overrule Crawford's issue on multiple outcry witnesses.

## Bolstering

Crawford also contends that Conrad's and Martinez's testimony was inadmissible bolstering.

### A.    Standard of Review

The abuse-of-discretion standard applies to evidentiary complaints. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

### B.    Applicable Law

Bolstering generally refers to evidence that improperly supports the testimony of an unimpeached witness or adds credence or weight to prior evidence introduced by the same party. *See Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (explaining that while the term bolstering is not in the Texas Rules of Evidence and is "slowly dying," "it has not yet expired"). Bolstering occurs when the testimony's sole purpose is to enhance the credibility of a witness or source of evidence, without substantively contributing "to make the existence of [a] fact that

is of consequence to the determination of the action more or less probable than it would be without the evidence." *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). Bolstering does not occur when the evidence or source of evidence "corroborates" other evidence and is also relevant. *Id.*

## C. Error

Here, there was no biological evidence recovered from a sexual assault, so the identity of the perpetrator was a core issue along with Haley's credibility. There was a partial confession by Crawford to one aggravated sexual assault charge and the indecency charge. But on the remaining charge, aggravated sexual assault by oral penetration of the complainant's vagina, Haley's credibility was central for the jury. Martinez's outcry testimony, which was inadmissible under article 38.072 because it repeated Jane's testimony about the same events, does not make the existence of a consequential fact more or less probable than it would be without the testimony. *See Rivas*, 275 S.W.3d at 886; *Cohn*, 849 S.W.2d at 819–20. Instead, in the context of article 38.072's limitations on hearsay, this cumulative testimony only added credence or weight to Haley's testimony. *See* TEX. CODE CRIM. PROC. art. 38.072; *see also Sandoval v. State*, 409 S.W.3d 259, 289 & n.21 (Tex. App.—Austin 2013, no pet.) (child complainant's testimony improperly bolstered by repetition of inadmissible hearsay because "listener becomes more confident that the [repeated] statement is true, whether or not it actually is"); *Lopez v. State*, 315 S.W.3d 90, 98–

99 (Tex. App.—Houston [1st. Dist.] 2010) (repetitive outcry testimony bolstered complainant's testimony without making existence of facts at issue more or less probable), *rev'd on other grounds*, 343 S.W.3d 137 (Tex. Crim. App. 2011); *but see Cantu v. State*, 830 S.W.2d 166, 170–71 (Tex. App.—Dallas 1992, no writ) (outcry testimony that satisfies article 38.072 is not bolstering).

Similarly, Conrad's testimony was inadmissible under article 38.072 because it did not describe any of the alleged offenses beyond making a general allusion to abuse. *See Bargas*, 252 S.W.3d at 894–95. Because Conrad's testimony did not make the existence of a fact at issue more or less probable than it would be without the evidence, it served only to bolster Haley's testimony. *See Lopez*, 315 S.W.3d at 98–99; *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988) (bolstering occurs when evidence used to add credence or weight to unimpeached evidence).

Therefore, it was error to admit Conrad's and Martinez's outcry testimony.

**D.    Harm**

Because Conrad's and Martinez's outcry testimony was impermissible bolstering, we evaluate harm under the rule for non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (bolstering evidence is subject to harmless error analysis). And we reach the same conclusion as our earlier harm analysis. Because Haley testified to the same information as Conrad and Martinez, the error in admitting their testimony is

23

harmless. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove."); *Lamerand*, 540 S.W.3d at 259.

We overrule Crawford's bolstering issue.

## Cumulative Error

Crawford asserts in his final issue that the cumulative effect of the outcry and bolstering errors was harmful.

## A. Applicable Law

"The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would." *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (internal quotation omitted). We do not simply count the number of separate errors to find harm. *See Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring); *Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (existence of multiple errors does not alone warrant reversal). An appellant must show that the errors "synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict." *See Linney*, 413 S.W.3d at 767 (Cochran, J. concurring); *Lumsden v. State*, 564 S.W.3d

858, 899 (Tex. App.—Fort Worth 2018, pet. ref'd) (considering non-constitutional errors in the aggregate).

Where cumulative error was based only on non-constitutional errors, our sister courts have conducted an analysis under Rule 44.2(b).[9] *See Temple v. State*, 342 S.W.3d 572, 612 (Tex. App.—Houston [14th Dist.] 2010), *aff'd on other grounds*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *Warr v. State*, 418 S.W.3d 617, 621, 623 (Tex. App.—Texarkana 2009, no pet.) (applying non-constitutional harm analysis); TEX. R. APP. P. 44.2(b); *see also Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988) (considering whether harm in the aggregate was reversible under former

---

[9] In an unpublished opinion that did not apply the cumulative error doctrine because the issues raised by the appellant were either not error or not preserved, this Court cited *Estrada* as holding that the cumulative error doctrine provides relief only when constitutional errors violate the trial's fundamental fairness. *See Tenas v. State*, No. 01-22-00309-CR, 2023 WL 4003071, at *13 (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet.) (mem. op., not designated for publication); *see also Arevalo v. State*, 675 S.W.3d 833, 861 n.5 (Tex. App.—Eastland 2023, no pet.) (citing *Estrada* for the same principle). We note the quoted language from *Estrada* is not the Court of Criminal Appeals' own but instead is found in a parenthetical citing federal authority. *See Estrada*, 313 S.W.3d at 311 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). Other courts have applied *Estrada* without limiting cumulative error to constitutional errors. *See, e.g.*, *Linney v. State*, 401 S.W.3d 764, 782 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (discussing non-constitutional errors in cumulative error analysis); *Cabello v. State*, No. 13-19-00341-CR, 2022 WL 3451368, at *23 (Tex. App.—Corpus Christi-Edinburg, Aug. 18, 2022, no pet.) (mem. op., not designated for publication) (same); *Screws v. State*, 630 S.W.3d 158, 169 (Tex. App.—Eastland 2020, no pet.) (same). Because *Estrada* only states "we cannot say that 'two or more errors' . . . rendered this phase of appellant's trial fundamentally unfair," we do not find that it limits the cumulative error doctrine from providing relief for cumulative non-constitutional errors. *See Estrada*, 313 S.W.3d at 311.

rules). We find this consistent with the Texas Court of Criminal Appeals' requirement that reversible cumulative error must render the applicable phase of trial fundamentally unfair. *See Jacobson v. State*, 398 S.W.3d 195, 204 (Tex. Crim. App. 2013); *Estrada*, 313 S.W.3d at 311.

When determining non-constitutional harm, we must examine the entire record and have a fair assurance that the error did not influence the jury or had only a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We consider the following nonexclusive factors: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). We will not overturn a conviction if, after examining the entire record, we have fair assurance that the error did not influence the jury or did so only slightly. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

**B. Analysis**

We identify two non-constitutional errors here, improper admission of outcry testimony and bolstering, which we found harmless. Crawford also asserts that the alleged motion to suppress error should be considered in a cumulative error analysis,

but because we found no error on that issue, we will not consider it here. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (appellant must first prove error before any error can be considered in the aggregate).

First, the jury heard from Conrad and Martinez separately. Conrad told the jury that after she talked to Haley and other youth about abstinence, Haley revealed that she had been raped and the assailant had a gun. The jury then heard from Martinez, who, as a former forensic interviewer, is trained to interview children about allegations of abuse. Martinez repeated the same information that Jane had already testified to. All three outcry witnesses testified on the same day and in immediate succession of each other.

Second, the State did not emphasize or mention Conrad's or Martinez's testimony during closing arguments. Instead, it focused on the testimony of the investigators who interviewed Crawford, Crawford's confession, Haley's testimony, and Mary's testimony.

Third, the jury charge instructed the jurors that they "review the evidence," "determine the facts and what they prove," and "judge the believability of the witnesses and what weight to give their testimony."

Fourth, considering the nature and strength of the other evidence supporting the verdict, we note that Crawford confessed to digitally penetrating Haley's vagina and touching her breasts; Lieutenant Salazar testified that Crawford initially

confessed to also "going down" on Haley but he later recanted; Haley testified in detail about the abuse; Haley's outcry statement to Jane supported her testimony; Jane testified that Haley knew the difference between a truth and a lie; and Mary's testimony corroborated the locations and timeline as recounted by Haley.

We must also consider the substantially similar testimony that was admitted. We have not previously extended the "harmless error doctrine" to a cumulative error harm analysis under Rule 44.2(b).[10] We find *Sandoval*'s reasoning on cumulative error persuasive. Where a defendant has consistently objected to inadmissible evidence except the child complainant's testimony, in this context where the repetition and synergy of inadmissible evidence is potentially harmful, the harmless error doctrine is not determinative. *See Sandoval*, 409 S.W.3d at 289–90 & n.21 ("Repetition is an effective method of persuasion. . . . [A]fter hearing a plausible statement repeated, the listener becomes more confident that the statement is true, whether or not it actually is."); *see also Coble v. State*, 330 S.W.3d 253, 286–87 (Tex. Crim. App. 2010) (treating harmless error doctrine as a non-determinative factor in analyzing harm under Rule 44.2(b)); *Linney*, 401 S.W.3d at 767 (looking

---

[10] We recognize that *Leday* instructs that "overruling an objection to evidence will not result in reversal when other such evidence was received without objection," but this did not consider the application of the harmless error doctrine in the context of cumulative error. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see also Sandoval*, 409 S.W.3d at 289 (applying, in dicta, cumulative error without harmless error doctrine).

for multiple errors that synergistically achieve critical mass necessary to cast shadow on verdict); *Anderson*, 717 S.W.2d at 628 ("Inadmissible evidence *can* be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." (emphasis added)). As stated in our earlier harm analyses, Haley testified to the same information as Conrad and Martinez.

Even though the jury heard from Conrad and Martinez in short succession of Jane and were followed by Haley, the State did not emphasize Conrad's or Martinez's testimony in closing, the jurors were instructed that they could determine the weight of each witness's testimony, Crawford had confessed to some of the offenses, Haley testified in detail about the same facts, and Mary corroborated parts of Haley's testimony. Given these circumstances, after conducting our own review of the entire record, including all the testimony and evidence, we cannot conclude these errors considered together affected Crawford's substantial rights. *See Temple*, 342 S.W.3d at 612; *Haley*, 173 S.W.3d at 518.

We overrule Crawford's final issue.

## Conclusion

Accordingly, we affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).